UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jesse-Lynn V. Gentlewolf,          :
            Plaintiff,             :
                                   :
            v.                     :      File No. 1:08-CV-261
                                   :
Windham County Humane Society,     :
Inc., Suzanne Caviola, Pamela      :
Sorton, Vermont-New Hampshire      :
Veterinary Clinic, Jerilyn Jacobs, :
Crager J. Boardman, Judith Ann     :
Jarvis, Christopher Cataldo,       :
Officer Jason O'Brien, Lt.         :
Sherwood Lake, Officer Robert      :
Larkin, Sheila Prue, Dan Davis     :
Nathaniel Seeley, Tracy Shriver,   :
Mimi Brill, Katherine Hayes,       :
Paul Berch, Tracie Tyba, Executive :
Director of Windham County Humane  :
Society, Nancy Sage, Carrie        :
Roberts, Kim Ward, Windham County  :
Humane Society Officers, Board     :
of Directors, and Executive        :
Directors, Brattleboro Veterinary  :
Clinic, Ronald S. Svec,            :
            Defendants.            :


OPINION AND ORDER
(Papers 23, 24, 26, 28, 29, 31,
33, 35, 38, 40, 41, 46 and 52)

On December 2, 2005, law enforcement officials acting

pursuant to a search warrant entered the home of *pro se* plaintiff

Jesse-Lynn Gentlewolf and discovered numerous animals in poor

condition.  The State ultimately moved for and received an order

for animal forfeiture, and Gentlewolf was criminally charged.

Gentlewolf now brings this civil action against a host of

defendants, including veterinarians, law enforcement officials

and attorneys, claiming that the seizure of her animals was wrongful and that her rights were violated.

Several defendants have moved to dismiss. Some defendants have moved in the alternative for a more definite statement of claims. For the reasons set forth below, more definite statements are certainly required as to nearly all defendants, and some defendants are entitled to immediate dismissal from the case.

## Factual Background

The recitation of facts in Gentlewolf's 33-page complaint is disjointed and difficult to comprehend. Accordingly, the Court first turns to a related Vermont Supreme Court opinion for background. In State v. Gentlewolf, 2007 WL 5323075 (Vt. Feb. Term 2007), the state Supreme Court affirmed the lower court's granting of the State's motion for animal forfeiture. In summarizing the facts, the court first found that Gentlewolf was incarcerated in New Hampshire "on or about Thanksgiving (November 24) of 2005," and that she was still incarcerated when law enforcement officials responded to a complaint on December 2, 2005. Gentlewolf, 2007 WL 5323075, at *1. The complainant reported having seen a dog at Gentlewolf's home a few weeks earlier, and was afraid that the dog was being neglected or abused. Id.

> When the police officer arrived at [Gentlewolf]'s home
> for the welfare check, he saw several animals - both

cats and dogs - that were very thin and appeared
otherwise unhealthy.  He observed that there was no
food or water available for the animals, and that the
shelter provided was in poor condition.  There did not
appear to be anyone at the residence.  The police
obtained a warrant to search the residence and seize
any abused or neglected animals.  They arrived on
December 2, 2005, with food and water for the animals
and crates for transporting them. . . .   [O]nce inside
the home, the officers found sixteen dogs and several
cats.  There was animal waste throughout the house.
Some of the dogs inside the house were confined in
crates; some of these crates were not large enough for
the dogs.  There was no food or water available for the
animals.

The animals were examined by a veterinarian, who found
that all of the cats suffered from long-term
respiratory infections, all of the animals were
dehydrated, and most were underweight.  The
veterinarian concluded that the animals could have
deteriorated to their current condition only if they
had not been receiving proper veterinary care or
adequate shelter.  She also determined that the
animals' condition was caused by insufficient food, or
by parasites, or by a combination of the two.  The
animals were infected with roundworms, hookworms,
whipworms and tapeworms.

Id.

     In the instant case, Gentlewolf alleges that the entry into

her home and seizure of her animals was unlawful.  Her suit is

brought against the complainant, the police, and the

veterinarians who evaluated the animals.  She is also suing

prosecutors, defense attorneys, and the judge involved in the

animal forfeiture action and/or the related criminal action.

     In the first 16 pages of her complaint, Gentlewolf

identifies each defendant and provides a short explanation of his

or her alleged actions.  These explanations, however, are not

clearly presented and provide only a general sense of what that

defendant may have done to cause Gentlewolf harm.  For example,

the identification of veterinarian Crager Boardman reads:

> Brattleboro Veterinary Clinic and, primary owner Crager
> J. Boardman, D.V.M., as secondary co-conspiring agency
> supporting partner Pamela Sorton, D.V.M., as an acting
> veterinarian's treatments/services agency for [Windham
> County Humane Society]'s care of Plaintiff's animals
> and various veterinary supplies supplied to WCHS'
> various agents (especially worming drugs), and autopsy
> services, as Defendant . . . .

(Paper 3 at 5).  Another defendant, Lieutenant Sherwood Lake of

the Windham County Sheriff's Department, is identified as the

> ranking officer during 12/02/2005 raids illegal
> seizures enforcement taking-removal of Plaintiff's
> property during which time Plaintiff's significant
> other - life lease tenant/boyfriend was forced off
> property and from home being told state was seizing
> entire property and he was denied return as WCSD's
> employee (false warrant).

Id. at 10.  Other descriptions are similarly stated, and the

factual allegations in the rest of the complaint do little to

illuminate Gentlewolf's precise claims.

Gentlewolf entitles the second half of her complaint

"Plaintiff's Torte [sic] Complaint for Return of Stolen Property,

i.e. Animals, and Restitution/Retri- [sic] for Damaged Property,

Losses and Character Defamations-Professional."  (Paper 3-2 at

2).  Although she frames her complaint as a state law tort claim,

she makes reference to federal violations including hate crimes,

conspiracies, "cyberspace stalkings," and illegal seizures.  The

bulk of her allegations, however, focus on the fact that her

animals were seized by law enforcement, without a veterinarian present, and that results of subsequent tests on the animals were "suppressed." Accordingly, she is suing all those involved in the seizure and subsequent testing, as well as participants in the legal proceedings that followed. For relief, Gentlewolf asks for "return of her stolen property, values, and, restitution and retribution(s) of ensuing broken and damaged household's losses, as well as an unknown projections estimated damages . . . ." <u>Id.</u> at 15-16.

Discussion

I. <u>Motion To Dismiss Standard</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide factual allegations sufficient to raise the right to relief to a plausible level. <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "The

plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50.

II. Boardman's Motion to Dismiss

    A. Timeliness

The first motion to dismiss received by the Court is that of Crager Boardman. Dr. Boardman offers three arguments for dismissal. First, he argues that Gentlewolf's claims are untimely. This argument, as discussed below, has been raised in a number of the defendants' motions and is based upon the premise that Gentlewolf's complaint was filed on December 9, 2008. Because the animals were allegedly seized on December 2, 2005, the defendants contend that the complaint was not filed within the three-year limitations period.

Gentlewolf submitted her complaint to the Court, together with a motion to proceed *in forma pauperis*, on December 2, 2008. The Court granted her motion on December 9, 2008, and the complaint was filed the same day. For statute of limitations purposes, the complaint is considered filed on the date the *in forma pauperis* papers are received by the Court, rather than the date on which the Court approves the *in forma pauperis*

application.  See Toliver v. County of Sullivan, 841 F.2d 41, 42 (2d Cir. 1988);  Fletcher v. Runyon, 980 F. Supp. 720, 721-22 (S.D.N.Y. 1997); Philippeaux v. County of Nassau, 921 F. Supp. 1000, 1007 (E.D.N.Y. 1996).  The complaint in this case is therefore deemed submitted on December 2, 2008, and Boardman's timeliness argument is misplaced.

B.  Abstention

Boardman also argues an identical claim has been brought in state court, and that this Court should therefore abstain from hearing Gentlewolf's federal complaint.  The underpinning of this argument is the doctrine of abstention set forth by the U.S. Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  The Court in Colorado River noted that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  424 U.S. at 813. Nonetheless, in "exceptional circumstances," a Court may abstain when there are concurrent state and federal proceedings.  Id.

"The principles of Colorado River are to be applied only in situations involving the contemporaneous exercise of concurrent jurisdictions. . . .  Therefore, a finding that the concurrent proceedings are parallel is a necessary prerequisite to abstention under Colorado River."  Dittmer v. County of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998).  Once contemporaneousness is established, a court is required to examine six factors in

determining whether dismissal is warranted: "(1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." <u>De Cisneros v. Younger</u>, 871 F.2d 305, 307 (2d Cir. 1989).

Here, it is difficult to base a dismissal on concurrent proceeding because the defendants have not submitted a copy of Gentlewolf's state court complaint. Instead, the Court is asked to rely on counsel's representation that "the Complaint in this Federal Court action is identical to that brought in the Windham Superior Court." (Paper 23 at 2).

Moreover, there is little indication this case is sufficiently "exceptional" to warrant abstention. Reviewing the six factors set forth above, it is at first apparent that any *res* in question is within Vermont. Second, the convenience of the forum does not weigh in favor of abstention, as all parties are Vermonters. <u>Village of Westfield v. Welch's</u>, 170 F.3d 116, 122 (2d Cir. 1999). Third, the Court certainly has an interest in avoiding "piecemeal" litigation. Nonetheless, the fact that there may be concurrent proceedings, alone, does not make the case "exceptional."

Fourth, it is not clear which action was filed first. Using December 9, 2008 as the federal filing date, Boardman contends

that the state court complaint was filed "earlier in December 2008." Another defendant asserts that the state court complaint was filed "on or about December 2, 2008." (Paper 46 at 4). However, if the Court uses December 2, 2008 – the date on which Gentlewolf's *in forma pauperis* papers were received – as the effective date of her federal filing, the filings appear to have been roughly simultaneous. Furthermore, the "[d]ecision does not rest on a race to the courthouse. Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum." Arkwright-Boston v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985). No defendant has provided the Court with any information about the state court litigation. Thus, the Court cannot weigh this factor in favor of abstention.

As to the fifth factor, Gentlewolf raises both state and federal claims. Accordingly, the law that provides the rule of decision may include federal provisions, and the Supreme Court has held that "the presence of federal law issues must always be a major consideration weighing against surrender." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983). Finally, the Court recognizes the state courts would have concurrent jurisdiction over Gentlewolf's federal claims. See Tafflin v. Levitt, 493 U.S. 455, 458 (1990) (federal and state

courts have concurrent jurisdiction over RICO claims); <u>Felder v.</u>
<u>Casey</u>, 487 U.S. 131, 147 (1988) (§ 1983 claims).

On balance, this case does not appear to be so "exceptional"
as to warrant abstention.  The litigation may be piecemeal, and
the state court will certainly have concurrent jurisdiction over
Gentlewolf's federal claims, but based upon the current record
all other factors weigh against abstaining.  Consequently, the
Court will not dismiss the case on this basis at this time.

C.  <u>Failure To State A Claim</u>

Boardman's strongest argument is that the complaint fails to
state a claim for relief.  The sole reference to Boardman in the
complaint is the vague reference to his role in providing
"treatment services" and "various veterinary supplies."  (Paper 3
at 5).  It is not clear how these services relate to Gentlewolf's
other claims, or how Boardman's alleged actions caused a
cognizable injury.  The complaint therefore fails to put Boardman
on adequate notice of the claim against him, as required under
Rule 8.

Boardman asks for dismissal, or in the alternative, for a
more definite statement.  A more definite statement is
appropriate where, as here, the complaint is so vague or
ambiguous that the defendant cannot reasonably be required to
frame a responsive pleading.  Fed. R. Civ. P. 12(e); <u>see also</u>
<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) ("If a

10

pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). The motion for a more definite statement (Paper 24) is, therefore, GRANTED.

The motion to dismiss (Paper 23) is DENIED, though without prejudice. Even if the Court were to grant Boardman's motion to dismiss, it would need to allow Gentlewolf leave to amend her complaint to state a claim that on its face is non-frivolous. See Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Therefore, the result would be fundamentally the same as granting the motion for a more definite statement. Dismissal of the motion to dismiss without prejudice leaves the defendant the option of again moving to dismiss, if appropriate, once he receives the amended complaint.

Gentlewolf must submit an amended complaint within 30 days of the date of this Order. She is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Consequently, the amended complaint must include all allegations against each defendant such that it can stand alone as the sole complaint in this

action.  The amended complaint must also comply with Rule 8,
thereby giving the defendants clear notice of the claims against
which they must defend.  Failure to file a properly drafted
complaint within the 30-day period may result in the dismissal
with prejudice of Gentlewolf's claims against Boardman.

III.  Svec, Vermont-New Hampshire Veterinary Clinic, and
      <u>Jacobs Motion to Dismiss</u>

The next motion to dismiss was filed by defendants Ronald
Svec and Jerilyn Jacobs, each of whom are veterinarians, and by
the Vermont-New Hampshire Veterinary Clinic.  The arguments
submitted by these defendants are the same as those submitted in
the Boardman motion, and the result is the same.  Specifically,
the statute of limitations and abstention arguments are rejected,
the Court finds the complaint lacking under Rule 8, and a more
definite statement is required.

As was the case with Dr. Boardman, the allegations against
these defendants do not place them on adequate notice of
Gentlewolf's legal claims.  The only specific allegation
involving these defendants, as best as the Court can decipher,
reads:

> Vermont-New Hampshire Veterinary Clinic including
> various veterinarians, especially Dr. Jerilyn E.
> Jacobs, VDM (-Svec), as enacting agents for WCHS
> regarding WCHS claimed emergency hospitalizations
> rehydrations "in house" veterinarians services and
> labatories (sic) workup re: "dehydrated shepherd"
> alleged claimed stay's charges, as acting agency's
> supporting WCHS . . . .

(Paper 3 at 4).  Although these allegations seem to suggest a
connection to the care of Gentlewolf's animals after they were
removed from her home, it is not clear what these defendants did
that was wrongful.  Their motion to dismiss (Paper 26) is DENIED
without prejudice, and their motion for a more definite statement
(Paper 26) is GRANTED on the same terms as set forth above.

IV.  Davis, Shriver, Ward and Brill Motions to Dismiss

Tracy Shriver, the Windham County State's Attorney who
prosecuted Gentlewolf, Kim Ward, who was appointed as
Gentlewolf's guardian *ad litem*, and Gentlewolf's appointed
counsel Mimi Brill have jointly moved to dismiss or, in the
alternative, for a more definite statement.  (Papers 28 and 29).
The same arguments offered by these defendants are presented in a
separate pair of motions filed by State's Attorney Dan Davis.
(Papers 40 and 41).  The Court will therefore address all three
motions together.

The motions first argue that Gentlewolf has failed to set
forth any basis for federal court jurisdiction.  As set forth
above, however, the complaint clearly raises several federal
issues, including allegations of hate crimes and RICO violations.

The defendants next submit the complaint does not comply
with Rule 8.  With respect to defendant Mimi Brill, this is
certainly true.  The complaint alleges that Brill was appointed
counsel "for Plaintiff's deemed 'incompetent' lack of proper

legal defense's agencies professional 'forensic investigations'
aides, and, refusal to allow factual defense's documents to be
entered into shared discoveries Plaintiff's favor . . . ."
(Paper 3 at 14).  There also appears to be an allegation that
Brill played a role in "silencing" certain witnesses, possibly
including Gentlewolf herself.  (Paper 3-2 at 11).  Because these
claims are so poorly pled, Brill is entitled to a more definite
statement.[1]  Her motion to dismiss is DENIED without prejudice,
and her motion for a more definite statement (Paper 29) is
GRANTED.

     Davis, Shriver and Ward argue that they are entitled to
absolute immunity for their respective roles.  The complaint
alleges that Shriver prosecuted Gentlewolf based upon
insufficient evidence.  Id. at 13-14.  Davis was the State's
Attorney in Windham County at the time.  Id. at 12.

     The decision as to whether to bring a prosecution,
regardless of the evidentiary support for that prosecution, is
entitled to absolute prosecutorial immunity.  See Imbler v.
Pachtman, 424 U.S. 409, 430 (1976) (holding that prosecutors
enjoy absolute immunity from liability under § 1983 in suits

---

     [1] Brill also argues that to the extent Gentlewolf is
bringing an ineffective assistance of counsel claim, her relief
is limited to a post-conviction relief petition.  While this may
be true, the complaint could also be read liberally as asserting
a cause of action for legal malpractice.  Brill's motion does not
address the viability of a malpractice claim.

seeking damages for acts carried out in their prosecutorial capacities); Doe v. Phillips, 81 F.3d 1204, 1210 (2d Cir. 1996) (same).  In this case, Gentlewolf appears to be suing the prosecutors for using their discretion and proceeding with, what in her view was, an inadequately supported case.  Because Gentlewolf is plainly suing Davis and Shriver over their decision to prosecute, her claims are barred and their motions to dismiss (Papers 28 and 41) are GRANTED.

Defendant Ward is similarly protected.  The allegations against her, although unclear, suggest that she was appointed as guardian *ad litem* and subsequently served as a witness.  In either case, immunity applies.  See Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989) (holding that guardian *ad litem* and conservator appointed by family court judge "were involved in the adjudicative process and shared in the family court judge's absolute immunity."); Briscoe v. LaHue, 460 U.S. 325, 330-32 (1983) (witnesses are absolutely immune from liability for damages).  Ward's motion to dismiss (Paper 28) is therefore GRANTED.

V.   Windham County Humane Society Defendants

Gentlewolf has sued the Windham County Humane Society ("WCHS"), its officers, board of directors, and Executive Directors in their Humane Society capacities.  Those defendants now move to dismiss on the same grounds submitted by Dr. Boardman

and the other veterinarians.  Again, and in part for reasons
discussed above, the Court will not dismiss Gentlewolf's claims
but will require a more definite statement.

As with her other claims, Gentlewolf's allegations of
wrongdoing by WCHS and its staff are unclear.  The complaint
makes vague references to misdiagnoses, suppressed autopsy
results, "chain of custody" issues, and wrongful removal of
animals.  How much of this conduct pertains directly to WCHS
employee or agents is not readily apparent.  Other allegations,
such as the claim that "WCHS blatant mass-medias frenzied cruelty
protection against Plaintiff (and her family) towards amassing an
enormous 'donations needed' 'animals needed rescuing' 'campaigns'
donations funds inflow . . ." make no sense.  (Paper 3-2 at 8).

A court may dismiss "a prolix complaint without leave to
amend in extraordinary circumstances, such as where leave to
amend has been previously given and the successive pleadings
remain prolix and unintelligible."  Salahuddin v. Cuomo, 861 F.2d
40, 42 (2d Cir. 1988).  Here, despite the vague and at times
unintelligible nature of Gentlewolf's pleadings, the Court has
not yet allowed her an opportunity to present her claims in a
manner that complies with Rule 8.  The WCHS defendants' motion to
dismiss (Paper 31) is therefore DENIED without prejudice, and
their motion for a more definite statement (Paper 31) is GRANTED.

16

This ruling also applies to the separately filed motion to dismiss submitted by the former Executive Director of WCHS, Susan Caviola.  (Paper 38).[2]

VI.  Judge Katherine Hayes' Motion To Dismiss

One of the defendants is state court Judge Katherine Hayes. Judge Hayes reportedly presided over the forfeiture proceeding. The Court construes Gentlewolf's allegations against Judge Hayes as § 1983 claims, and not as an appeal of state court rulings.

The allegations against Judge Hayes are that "due to seemingly biased prejudice" toward the Plaintiff, the Judge denied Gentlewolf adequate discovery and a fair hearing, and held improper *ex parte* meetings in chambers with the State's Attorney. (Paper 3 at 15); (Paper 3-2 at 15).  In her motion to dismiss, Judge Hayes submits that she is absolutely immune from suit for these alleged actions.  The Court agrees.

It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. See, e.g., Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Forrester v. White, 484 U.S. 219, 225-26 (1988).  In addition, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

---

[2] Caviola also presents a Rooker-Feldman argument.  This argument is addressed in Section VIII below.

violated or declaratory relief was unavailable."  42 U.S.C. §
1983.

"Judicial immunity is conferred in order to insure 'that a
judicial officer, in exercising the authority vested in him,
shall be free to act upon his own convictions, without
apprehension of personal consequences to himself."  <u>Bliven v.
Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009) (quoting <u>Bradley v.
Fisher</u>, 80 U.S. (13 Wall.) 335, 347 (1871)).  Consequently, "even
allegations of bad faith or malice cannot overcome judicial
immunity."  <u>Id.</u> (citing <u>Pierson v. Ray</u>, 386 U.S. 547, 554
(1967)); <u>Tucker v. Outwater</u>, 118 F.3d 930, 932 (2d Cir.), <u>cert.
denied</u>, 522 U.S. 997 (1997)).

Judicial immunity is limited to acts that are "judicial" in
nature.  <u>Id.</u> at 209-10.  "[T]he factors determining whether an
act by a judge is a 'judicial' one relate to the nature of the
act itself, *i.e.*, whether it is a function normally performed by
a judge, and to the expectations of the parties, *i.e.*, whether
they dealt with the judge in his judicial capacity."  <u>Stump v.
Sparkman</u>, 435 U.S. 349, 362 (1978).  Employing a functional
analysis, "the Supreme Court has generally concluded that acts
arising out of, or related to, individual cases before the judge
are considered judicial in nature."  <u>Bliven</u>, 579 F.3d at 210.

The actions allegedly taken by Judge Hayes were all in the
context of Gentlewolf's state court case.  Rulings with respect

18

to discovery and the conduct of any hearings were clearly judicial in nature. Even meetings with counsel, though allegedly *ex parte* and in bad faith, were undoubtedly conducted as part of the proceedings before the state court. This Court therefore finds that Judge Hayes is entitled to immunity from Gentlewolf's claims, and her motion to dismiss (Paper 33) is GRANTED.

VII.  <u>Sorton Motion To Dismiss</u>

Pamela Sorton, another veterinarian, filed the next motion to dismiss. As did the others, Dr. Sorton argues failure to state a claim, abstention and statute of limitations, and asks as an alternative for a more definite statement of claims. The sole allegations against Sorton are that she was a "secondary" WCHS veterinarian, and that she may have been involved in some of defendant Boardman's activities. (Paper 3 at 4-5). Because the claims against Boardman are too vague to put a defendant on notice, the claims against Sorton are equally flawed. Therefore, and for reasons stated previously, Sorton's motion to dismiss (Paper 35) is DENIED without prejudice and her motion for a more definite statement (Paper 35) is GRANTED.

VIII.  <u>Larkin and O'Brien Motions To Dismiss</u>

The final two motions before the Court are from Jason O'Brien and Robert Larkin, each of whom were members of the Windham County Sheriff's Department in December 2005. (Papers 46 and 52). As with most of the allegations in the complaint, the

claims against these defendants are difficult to understand.  It
appears that O'Brien is claimed to have trespassed and entered
into Gentlwolf's home with an invalid search warrant.  (Paper 3
at 8-9).  O'Brien is also criticized for entering the house and
making judgments without a veterinarian.  Id.  Larkin is accused
of executing a "secondary warrant" on a different day, during
which he allegedly removed unidentified private property.  Id. at
10-11.

These defendants move to dismiss on three grounds: (1)
abstention, (2) statute of limitations, and (3) the Rooker-
Feldman doctrine.  The Court has already rejected the first two
arguments based upon the current record.  As to Rooker-Feldman,
the Court does not construe Gentlewolf's complaint as an appeal
of the state court animal forfeiture action.  Specifically, the
Court does not read the complaint as inviting "review and
rejection" of the state court judgment.  Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Instead,
Gentlewolf appears to be bringing constitutional claims, federal
statutory claims, and state law claims against the various
defendants for harming her property and her reputation.  Rooker-
Feldman thus does not apply.

In the alternative, O'Brien and Larkin ask for a more
definite statement.  The portions of the complaint regarding
these defendants include rambling and often disconnected

20

allegations ranging from trespass to misidentification of animals
to involvement in a broad conspiracy. (Paper 3 at 8-11).
Because of the nature and style of the complaint, the defendants
are entitled to a more definite statement in a format that
satisfies the Federal Rules of Civil Procedure. The motions for
a more definite statement (Papers 46 and 52) are therefore
GRANTED.

Conclusion

For the reasons set forth above, the motions to dismiss of
defendants Hayes, Davis, Shriver and Ward (Papers 28, 33 and 40)
are GRANTED, and these defendants are DISMISSED. Motions by
Davis, Shriver and Ward for a more definite statement (Papers 29
and 41) are DENIED as moot.

All motions to dismiss filed by other defendants (Papers 23,
26, 28 [as to defendant Mimi Brill], 31, 35, 38, 46 and 52) are
denied without prejudice. All remaining motions for a more
definite statement (Papers 24, 26, 29 [as to defendant Mimi
Brill], 31, 35, 38, 46 and 52) are GRANTED.

Gentlewolf shall submit an amended complaint on or before
December 28, 2009. She is again advised that an amended
complaint is intended to completely replace the prior complaint
in the action, and thus it "renders [any prior complaint] of no
legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668
(2d Cir. 1977); see also Shields v. Citytrust Bancorp, Inc., 25

F.3d 1124, 1128 (2d Cir. 1994).  Consequently, the amended

complaint must include all allegations against each defendant

such that it can stand alone as the sole complaint in this

action.  The amended complaint must also comply with Rule 8,

thereby giving the defendants clear notice of the claims against

which they must defend.  Failure to file a properly drafted

amended complaint by December 28, 2009 will result in the

dismissal of this case with prejudice.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 23rd

day of November, 2009.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge